IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KAREN BIRD, an individual,<br><br>      Plaintiff,<br><br>   v.<br><br>WEST VALLEY CITY, a political subdivision of the State of Utah, and KELLY DAVIS, in his official and individual capacities,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 59)**<br><br>Civil No. 2:12-cv-00903-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Defendants West Valley City (the "City") and Kelly Davis (collectively the "West Valley Defendants") move the Court[1] for summary judgment on Plaintiff Karen Bird's 42 U.S.C. § 1983 First Amendment retaliation claim. (Defs.' Mot. for Summ. J. (Mot.), ECF No. 59.) After considering the parties' briefing, oral argument, and the Tenth Circuit's prior opinion in this case, the Court DENIES the West Valley Defendants' Motion for Summary Judgment.

The West Valley Defendants assert no evidence exists to support Ms. Bird's contention that their belief she spoke to the press acted as a substantial or motivating factor in her termination. (Mot. ii, ECF No. 59.) The Court finds material disputes of fact prevent summary judgment on this element of Ms. Bird's claim. Alternatively, the West Valley Defendants argue Ms. Bird cannot contest the undisputed fact that the West Valley Defendants would have terminated Ms. Bird's employment regardless of their

---

[1] The parties consented to proceed before the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 11.)

belief that she spoke to the press. (Id.) The Court, however, finds material disputes of fact prevent summary judgment on this element Ms. Bird's claim. Lastly, Mr. Davis asserts qualified immunity shields him from liability in this case. (Id. at v.) The material factual disputes also prevent a finding prior to trial that qualified immunity protects Mr. Davis. Therefore, the Court denies the West Valley Defendants' Motion for Summary Judgment.

## PROCEDURAL HISTORY

The Motion before the Court results from a Tenth Circuit remand. The Court originally granted the West Valley Defendants summary judgment on Ms. Bird's Title VII claims, § 1983 equal protection claim, contract claims, and § 1983 First Amendment retaliation claim. (Mem. Dec. & Order, ECF No. 44.) Ms. Bird appealed; the Tenth Circuit affirmed in part and reversed the grant of summary judgment on Ms. Bird's § 1983 First Amendment retaliation claim for further proceedings consistent with its opinion. Bird v. West Valley City, 832 F.3d 1188, 1212–13 (10th Cir. 2016).

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), courts grant summary judgment if the movant shows no genuine dispute as to any material fact exists, and "the movant is entitled to judgment as a matter of law." "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (quoting E.E.O.C. v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000)). In evaluating a motion for summary judgment, the Court reviews "the facts in the light most favorable

to the nonmovant and draw[s] all reasonable inferences in the nonmovant's favor."

Jones v. Norton, 809 F.3d 564, 573 (10th Cir. 2015).

## FACTUAL BACKGROUND

Examining the evidence in a light most favorable to Ms. Bird, the following facts guide the Court's decision.  In November 2011, West Valley City Animal Services ("Animal Services") terminated Karen Bird.  Originally, in August of 2001, Animal Services hired Ms. Bird as a kennel tech.  (Reply Mem. in Supp. of Defs.' Mot. For Summ. J. (Reply), Statement of Elements & Undisputed Material Facts (Facts) ¶ 1, ECF No. 67.)  In 2002, Kelly Davis, Ms. Bird's supervisor, promoted Ms. Bird to Shelter Manager.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. (Opp'n), Response to Defs.' "Undisputed Material Facts" (Facts) ¶ 2, ECF No. 62.)  From 2002 until Ms. Bird's termination in 2011, Mr. Davis supervised Ms. Bird directly.  (Id. ¶ 3.)  Lane Morris, Director of West Valley City's Community Preservation Department, supervised Mr. Davis.  (Reply, Response to Add'l Material Facts (Add'l Facts) ¶ 3, ECF No. 67.)

In 2005, Shirlayne George of West Valley City's human resources department conducted an investigation of Animal Services.  (Opp'n, Facts ¶ 4, ECF No. 62.)  Ms. George's notes from the investigation contained a number of complaints that Animal Services employees purportedly made about Ms. Bird.[2] (Reply, Facts ¶ 6, ECF No. 67.)

In December 2010, Mr. Davis conducted a performance evaluation of Ms. Bird and noted a number of areas "need[ing] improvement"—adaptability, conflict resolution,

---

[2] Ms. Bird objects to the statements from this investigation as inadmissible hearsay. (Opp'n, Facts ¶ 6, ECF No. 62.)  The Court does not consider this fact for the truth of the complaints but rather to give context to the City's actions in light of the complaints. Therefore, the statement does not constitute hearsay.  Fed. R. Evid. 801(c)(2).

team leadership.  (Performance Review, ECF No. 59-3; Reply, Facts ¶ 12, ECF No. 67.)  At the time, Mr. Morris wanted to fire Ms. Bird, but Mr. Davis interceded on her behalf, preventing her termination.  (Reply, Facts ¶ 11, ECF No. 67; Appeal Tr. 308:16-309:17, ECF No. 62-12.)  Also in December 2010, following that evaluation, Mr. Davis sent Ms. Bird a letter outlining a number of issues he had with her performance, including her difficulty accepting and implementing direction.  (Letter from Davis to Bird, Dec. 21, 2010, ECF No. 59-4; Reply, Facts ¶ 13, ECF No. 67.)  Among other things the letter stated:  "When our shelter was under fire from the animal rights groups regarding the carbon monoxide chamber, you being a member of management, I was surprised to find that your public feelings on the subject were not in line with what both Taylorsville and West Valley leadership had decided in regards to its use."  (Id.)

Almost a year later, on October 17, 2011, several news outlets published articles about a cat who twice survived the City's attempts to euthanize her in the Animal Shelter's carbon monoxide chamber.  (Reply, Add'l Facts ¶ 7, ECF No. 67.)  Mr. Morris testified that after those stories ran, his "phone wouldn't stop ringing" from citizens calling to complain.  (Reply, Add'l Facts ¶ 8, ECF No. 67.)  Mr. Morris believed the press heard about the incident "[b]ecause Karen told them, or told the veterinarian who told them."  (Morris Dep. 43:18–44:2, ECF No. 59-5; Reply, Add'l Facts ¶ 8, ECF No. 67.)

Later that month, on October 26, 2011, the City's public relations department informed Mr. Davis that a reporter contacted the City stating he had "received an anonymous phone call from a person claiming that Kelly Davis was ordering a mass execution at the shelter because his shelter is over populated."  (Reply, Add'l Facts ¶ 11, ECF No. 67; Davis Log at KD0225-26, ECF No. 62-8.)  Mr. Davis similarly received

hundreds of calls from citizens. (Davis Dep. 186:11-25, ECF No. 59-12.) Concerned about the leaks, Mr. Davis requested a meeting with Mr. Morris to discuss them and asked Mr. Morris to include Ms. Bird in the meeting. (Reply, Add'l Facts ¶ 11, ECF No. 67; Davis Log at KD0225-26, ECF No. 62-8.) On November 1, 2011, Mr. Davis and Ms. Bird met with Mr. Morris. (Id.) In that meeting, Mr. Davis stated he "felt very strongly" that Ms. Bird leaked the information. (Id.) On that same day, Mr. Morris told Ms. Bird,

> [I]t's pretty obvious you can't work for [Mr. Davis] and [Mr. Davis] can't supervise you. . . . I've got . . . to see what our options are and what we could do. How we can restructure the shelter, the staff, everything. Because I don't want to lose either of you. You each have value. But you two are coming from two separate planets and there doesn't seem to be any way to get you both into the same orbit.

(Bird Dep. 167:21-168:21, ECF No. 59-1.)[3]

On November 3, 2011, Ms. Bird filed a formal written complaint against Mr. Davis with the City's human resources department. (Opp'n, Facts ¶ 18, ECF No. 62.) That day Ms. Bird spoke to Ms. George from the human resources department and said "I can't look at [Mr. Davis] in the face. So I don't know what kind of resolution there is." (Bird Dep. 158:9-160:13, ECF No. 59-1.)

On November 9, 2011, Mr. Davis prepared a letter reprimanding Ms. Bird for two hours of overtime she submitted with her timecard on October 26, 2011—the same day public relations told Mr. Davis a reporter received an anonymous phone call that Mr. Davis planned a "mass execution" at the Animal Shelter. (Reply, Add'l Facts ¶ 16, ECF

---

[3] Mr. Morris believes this subject first came up in October. (Morris Dep. 72:6-73:2, ECF No. 59-5.) However, Ms. Bird testified the conversation in question occurred on November 1, 2011 and has a recording of it. (Bird Dep. 167:21-168:21, ECF No. 59-1.) The Court must take the facts, supported by evidence, in a light most favorable to Ms. Bird.

No. 67.)  In the letter, Mr. Davis stated he did not authorize the overtime, and Ms. Bird

did not seek prior approval.  (Letter from Davis to Bird, Nov. 9, 2011, ECF No. 62-10.)

Ms. Bird only received this one letter of reprimand while working at the City.

On November 9th or 10th, 2011, Mr. Davis told Jon Andus, Animal Services'

volunteer coordinator, that the City terminated Ms. Bird for leaking sensitive information

about the shelter to the press, being insubordinate, and undermining Mr. Davis.

(Appeal Tr. 287:5-288:6, 288:15-22, 292:23-293:11, 300:14-301:4, ECF No. 62-12;

Andus post, 2:21 p.m. Nov. 10, ECF No. 62-11.)

The City put Ms. Bird on administrative leave and began an investigation.  (See

Appeal Tr. 295:1-14, ECF No. 62-12.)  On November 14, 2011, Ms. George, the same

human resources employee who conducted the 2005 investigation, conducted

interviews for the City's investigation.  (Animal Shelter Investigation, Nov. 14, 2011,

ECF No. 59-8.)  Ms. George's notes from the investigation include the following

reference:  "Rescue groups getting info should not have from Karen."  (George's Notes,

Nov. 14, 2011 at BIRD 0356, ECF No. 59-7.)  Ms. George's typed notes from the

investigation list a number of comments purportedly made by employees concerning

Ms. Bird, calling her "hard to work with," claiming she "belittled" staff, and identifying a

communication problem between Ms. Bird and Mr. Davis.  (Animal Shelter Investigation,

Nov. 14, 2011, ECF No. 59-8.)

On November 16, 2011, following the investigation, the City sent Ms. Bird a

memorandum identifying possible violations of City and Department policies and

notifying Ms. Bird of an upcoming pre-disciplinary meeting on November 21, 2011.

(Mem. from Morris to Bird, Nov. 16, 2011, ECF No. 59-9.)  The memorandum noted,

among other things, that Ms. Bird had a "history of insubordination and being subversive to [her] immediate supervisor at the Animal Shelter." (Id.) On November 21, 2011, Ms. Bird attended the pre-disciplinary meeting with Mr. Morris. (Bird Dep. 188:2–25, ECF No. 62-4.) On November 30, 2011, Mr. Morris sent Ms. Bird a letter notifying her the City terminated her for cause effective November 29, 2011. (Reply, Facts ¶ 27, ECF No. 67.) The letter did not disclose on what conduct the decision rested. (Letter from Morris to Bird, Nov. 30, 2011, ECF No. 59-11.) On December 12, 2011, Mr. Morris sent a follow up letter clarifying that he terminated Ms. Bird because of her insubordination and a lack of courtesy to and cooperation with employees and the public. (Letter from Morris to Bird, Dec. 12, 2011, ECF No. 59-15.) Mr. Morris swears he "terminated Ms. Bird for a number of reasons, including the fact that she had a long history of personal issues with the employees she supervised," but primarily because of her insubordination toward and unwillingness to work with Mr. Davis. (Morris Aff. ¶ 6, ECF No. 59-11.)

Mr. Morris's affidavit indicates he alone decided to terminate Ms. Bird. (Morris Aff. ¶ 3, ECF No. 59-11.) However, Mr. Morris also testified that Mr. Davis generally "ha[d] a hand" in terminating employees from Animal Services. (Appeal Tr. 306:25–307:16, ECF No. 62-12.) In addition, Mr. Davis acknowledged he and Mr. Morris met on "many occasions" to discuss the situation with Ms. Bird, and he assumed Mr. Morris based his decision at least in part, on those discussions. (Appeal Tr. 239:17-241:2, 281:20-282:7, ECF No. 62-12.) Furthermore, the West Valley Defendants credit Mr. Davis with preventing Mr. Morris from terminating Ms. Bird a year earlier, and Mr. Davis promoted Ms. Bird to manager in the first place. (Reply, Facts ¶ 11, ECF No. 67; Opp'n, Facts ¶ 2, ECF No. 62.)

Ms. Bird appealed her termination.  (Appeal Letter, Dec. 5, 2011, ECF No. 59-14.)  The West Valley Defendants include a number of facts regarding Ms. Bird's beliefs about of the reasons for her termination.  Those facts remain immaterial to summary judgment.

## DISCUSSION

### I.  Disputed Issues of Material Fact Preclude Summary Judgment on Ms. Bird's First Amendment Retaliation Claim

"A government employer 'cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'"  Burns v. Bd. of Cty. Comm'rs, 330 F.3d 1275, 1285 (10th Cir. 2003) (quoting Lytle v. City of Haysville, 138 F.3d 857, 863 (10th Cir.1998)).  When a government employer takes adverse action against "an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983—even if, as here, the employer makes a factual mistake about the employee's behavior."  Heffernan v. City of Paterson, 578 U.S. __, 136 S. Ct. 1412, 1418 (2016).

The Garcetti/Pickering test governs public employee First Amendment retaliation claims brought against an employer.  Trant v. Oklahoma, 754 F.3d 1158, 1165 (10th Cir. 2014) ("The familiar Garcetti/Pickering analysis governs First Amendment retaliation claims."); see Morris v. City of Colorado Springs, 666 F.3d 654, 661 (10th Cir. 2012) (acknowledging Garcetti/Pickering test applies to "public-employee free speech claims").  This test consists of five elements:

(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

Trant, 754 F.3d at 1165 (citing Dixon v. Kirkpatrick, 553 F.3d 1294, 1302 (10th Cir. 2009)).  As part of the remand in this case, the Tenth Circuit acknowledged that retaliation for free speech claims extends to cases where the employer thought the employee engaged in the speech, even if she did not.  Bird, 832 F.3d at 1212.  "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury."  Id. (emphasis added) (citing Dixon, 553 F.3d at 1302).

The West Valley Defendants argue in their Motion that a three-part test applies to Ms. Bird's First Amendment retaliation claim.  (Mot. 1-2, ECF No. 59.)  Non-employers may also have liability for retaliating against people for exercising their First Amendment rights.  Trant, 754 F.3d at 1169.  In those cases, the three-part test cited by the West Valley Defendants applies.  See id. (finding the Garcetti/Pickering test inapplicable to "a First Amendment retaliation claim against a defendant who is not the plaintiff's employer" and applying the three-part test to such claims).  In their Reply, the West Valley Defendants concede the Garcetti/Pickering test applies to both of them.  (Reply 1, ECF No. 67.)

The West Valley Defendants do not contest the first three factors of the Garcetti/Pickering test.  In their opening Motion, they addressed only the fourth element

of the test directly, and the fifth element indirectly. In response, Ms. Bird only addressed the fourth element. While the West Valley Defendants' Motion did not properly raise the fifth element, the record contains sufficient evidence to address the fifth element. Accordingly, the Court analyzes the fourth and fifth elements in turn.

### A. Substantial or Motivating Factor

Under the fourth element of the Garcetti/Pickering test, "the employee must show that the speech was 'a substantial factor or a motivating factor in a detrimental employment decision.'" Trant, 754 F.3d at 1166 (quoting Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1203 (10th Cir. 2007)). Courts only grant summary judgment on this element—typically a factual issue for the jury—"when 'there is simply no evidence in the record from which a trier of fact could reasonably conclude the [protected speech] was a motivating factor in [the plaintiff's] termination.'" Cypert v. Ind. Sch. Dist. No. 1-050, 661 F.3d 477, 484 (10th Cir. 2011) (alteration in original) (quoting Rohrbough v. Univ. of Colo. Hosp. Auth., 596 F.3d 741, 750 (10th Cir. 2010)).

Ms. Bird contests summary judgment on this element because a reasonable jury could infer from the facts that the West Valley Defendants' belief that she took part in contacting the press constituted a motivating factor in her termination. First, Ms. Bird argues that "[t]he timing of Ms. Bird's termination with respect to the negative publicity the City attributed to her suggests that her perceived role in the publicity motivated her termination." (Opp'n 3, ECF No. 62.) Specifically, Ms. Bird's termination came within a month following the first news articles about the ineffectually euthanized cat, indicating problems with the carbon monoxide chamber Ms. Bird previously opposed. (Id.) Second, Ms. Bird argues Mr. Morris and Mr. Davis "had numerous meetings to discuss

the situation leading up to [Ms. Bird's] termination" and harbored the belief that she had leaked the sensitive information to the press that hurt Animal Services' reputation. (Id. at 4.) Lastly, Mr. Davis "admitted to the [Animal Services] volunteer coordinator that Ms. Bird was being terminated because she was a 'mole.'" (Id.)

The West Valley Defendants counter that Ms. Bird's termination resulted directly from the culmination of the dysfunctional relationship between Ms. Bird and Mr. Davis, brought on by Ms. Bird's claiming an inability to work with Mr. Davis. (Reply 2-3, ECF No. 67.) Further, they assert Mr. Morris made the decision alone and without regard to the press leaks. (Id. at 3.) The West Valley Defendants also argue that Mr. Davis's allegedly telling Mr. Andus the City fired Ms. Bird because she was the mole cannot create a disputed fact because Mr. Davis did not participate in the decision to terminate Ms. Bird. (Id.) Therefore, the West Valley Defendants claim, Mr. Davis's statement lacks foundation. (Id.)

Ms. Bird's evidence creates a genuine dispute of fact regarding whether the West Valley Defendants terminated her because they believed she spoke to the press about the Animal Services' carbon monoxide chamber and euthanasia practices. West Valley City fired Ms. Bird on November 30, 2011—approximately one month after the leaks to the press occurred in late October 2011. Further, evidence exists showing both Mr. Morris and Mr. Davis shared concerns about the leaks and believed Ms. Bird served as the source of those leaks. Lastly, evidence exists that Mr. Davis told Mr. Andus, after the West Valley Defendants put Ms. Bird on administrative leave but before her termination, that they had fired Ms. Bird because they considered her the source of the leaks.

The short time between the leaks to the press and Ms. Bird's termination suggests the West Valley Defendants terminated her in retaliation for speaking to the press. See Seifert v. Unified Gov't of Wyandotte Cty./Kan. City, 779 F.3d 1141, 1158 (10th Cir. 2015) ("The short time between [the protected activity] and the adverse action supports an inference of retaliatory motive."). A reasonable jury could infer from the timing of Ms. Bird's termination that the West Valley Defendants harbored a retaliatory motive. See Hall v. U.S. Dep't of Labor, 476 F.3d 847, 859 (10th Cir. 2007) ("A factfinder may infer retaliatory motive from the fact that a hostile action is taken shortly after an employee's protected activity . . .  but it is not required to do so." (citation omitted)). "'Although protected conduct closely followed by adverse action may justify an inference of retaliatory motive, the mere temporal proximity of Plaintiff's protected speech to the adverse action is insufficient, without more, to establish retaliatory motive.'" Couch v. Bd. of Trustees of Mem'l Hosp., 587 F.3d 1223, 1236 (10th Cir. 2009) (quoting Baca v. Sklar, 398 F.3d 1210, 1221 (10th Cir. 2005)). And indeed, Ms. Bird relies on additional evidence to support her case.

The West Valley Defendants' argument that the timing of Ms. Bird's termination resulted directly from the issues between Ms. Bird and Mr. Davis "finally com[ing] to a head," (Reply 2, ECF No. 67), also has evidentiary support. West Valley City identified and raised multiple issues concerning Ms. Bird's performance and interactions with Mr. Davis in the years prior to any leaks to the press. Nevertheless, despite these issues, the Animal Shelter never formally disciplined or reprimanded Ms. Bird—let alone terminated her—until after the leaks to the press. Moreover, taking the facts in the light most favorable to Ms. Bird, the critical conversation she had with Mr. Morris when she

agreed with his conclusion that she and Mr. Davis could no longer work together occurred on November 1, 2011—after the leaks to the press. Thus, a jury could conclude that Mr. Morris did not decide to take action about Ms. Bird and Mr. Davis's situation until after he decided she leaked the information to the press.

"An employer's knowledge of the protected speech, together with close temporal proximity between the speech and challenged action, may be sufficiently probative of causation to withstand summary judgment. Other evidence of causation may include evidence the employer expressed opposition to the employee's speech." Maestas v. Segura, 416 F.3d 1182, 1189 (10th Cir. 2005) (citing Ramirez v. Okla. Dept. of Mental Health, 41 F.3d 584, 596 (10th Cir. 1994) & Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917, 929 (9th Cir. 2004)).

Thus, in conjunction with the timing, other evidence suggests the West Valley Defendants may have terminated Ms. Bird because they believed she spoke to the press about Animal Services' carbon monoxide chamber and euthanasia practices. Taking the facts in the light most favorable to Ms. Bird, the West Valley Defendants knew of the press leaks prior to her termination and blamed her for them. Additional evidence—including Mr. Davis's December 2010 letter and Ms. George's handwritten notes from the 2011 investigation—indicate that Ms. Bird's perceived views and public comments concerning the Animal Shelter's carbon monoxide chamber and euthanasia practices bothered Mr. Davis and others at the City. The press leaks disturbed Mr. Morris and Mr. Davis's normal work through numerous phone calls from the public and press and the need to have multiple meetings to address the fallout from the scandals. Likewise, Mr. Davis's testimony and documents show that the press leaks caused him

great concern, and he believed Ms. Bird served as the inside source. Mr. Morris also admits he considered Ms. Bird to be the leaker. Furthermore, Mr. Davis believes Mr. Morris considered their conversations about Ms. Bird prior to her termination in deciding to terminate her.

Additionally, Mr. Andus, the Animal Shelter's volunteer coordinator, stated under oath that Mr. Davis told him Animal Services terminated Ms. Bird because Mr. Davis believed Ms. Bird leaked the negative information. The Court rejects the West Valley Defendants' argument that Mr. Andus's sworn testimony lacks foundation. "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. Ms. Bird need not lay foundation for Mr. Davis's statement; she need only lay foundation for Mr. Andus's statement. Mr. Andus bases his testimony on his personal knowledge about what Mr. Davis said to him. Therefore, the Court overrules the West Valley Defendants' foundation objection to Mr. Andus's testimony.

Retaliation for exercising one's First Amendment rights need not provide the only reason for the adverse employment action, but it must provide "a substantial or motivating factor." Gann v. Cline, 519 F.3d 1090, 1093 (10th Cir. 2008); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) (placing burden on plaintiff to show constitutionally protected "conduct was a 'substantial factor' or to put it in other words, that it was a 'motivating factor'"). Viewing the evidence in the light most favorable to Ms. Bird, a rational jury could conclude from the conflicting evidence that the West Valley Defendants' belief that Ms. Bird spoke to the media about the Animal

Shelter's carbon monoxide chamber and euthanasia practices constituted a substantial or motivating factor in her termination.  Therefore summary judgment on the fourth element of the Garcetti/Pickering test remains inappropriate.  See Eisenhour v. Weber Cty., 744 F.3d 1220, 1229-30 (10th Cir. 2014) (finding the district court erred in granting summary judgment on this element in light of conflicting evidence); Seamons v. Snow, 206 F.3d 1021, 1028 (10th Cir. 2000) (denying summary judgment where defendant's motives in taking the alleged retaliatory action remain in dispute).  The trier of fact must weigh and resolve the conflicting evidence concerning the circumstances of Ms. Bird's termination and the West Valley Defendants' motivation in terminating her.

### B.    Same Employment Decision

Regarding the fifth element of the Garcetti/Pickering test, "the burden shifts to the defendant, who 'must show by a preponderance of the evidence it would have reached the same employment decision in the absence of the protected activity.'"  Trant, 754 F.3d at 1167 (quoting Cragg v. City of Osawatomie, 143 F.3d 1343, 1346 (10th Cir. 1998)).  Courts will only grant summary judgment on this element—which again generally remains an issue of fact for the jury—"when 'any reasonable jury would [have found] that [the plaintiff] would have been terminated even absent any desire on the Defendants' part to punish him in retaliation for his allegedly protected speech.'"  Trant, 754 F.3d at 1167 (alteration in original) (quoting Anemone v. Metro. Transp. Auth., 629 F.3d 97, 117 (2d Cir. 2011)).  The key question becomes "whether even without the improper motivation the alleged retaliatory action would have occurred."  Id. at 1168 (quoting Anemone, 629 F.3d at 120).

The West Valley Defendants argue in their Reply that the Court should grant summary judgment on the fifth element because "it is beyond contestation that Defendants would have terminated Plaintiff regardless of the protected activity."  (Reply 8, ECF No. 67.)  Among other things, the West Valley Defendants argue that Ms. Bird had problems with employees she supervised going back to the 2005 shelter investigation and that Mr. Morris stated his decision to fire Ms. Bird was "not motivated by, nor based in any way on, a belief that Plaintiff had leaked the information about the animal shelter to the press."  (Id. at 8 & Add'l Facts ¶ 8 (quoting Morris Aff. ¶ 3, ECF No. 59-20).)  The West Valley Defendants also argue that the Tenth Circuit's prior decision in this case establishes the law-of-the-case and forecloses any finding that "the City's actions to terminate Plaintiff on the belief that Plaintiff leaked information to the media was the 'but-for' cause of Plaintiff's discharge."  (Reply 12, ECF No. 67.)  Specifically, the West Valley Defendants argue that "the necessary implication" of the Tenth Circuit's findings concerning Ms. Bird's insubordination and her discourteous or uncooperative behavior "is that the City had legitimate, justified and valid reasons to terminate Plaintiff's employment, and that the decision to terminate Plaintiff would have been made even without the alleged improper motivation."  (Id.)

The Court rejects the West Valley Defendants' law-of-the-case argument.  In its opinion, the Tenth Circuit analyzed the facts presented in the context of Ms. Bird's claims of gender discrimination, not First Amendment retaliation.  Bird, 832 F.3d at 1208-09 (finding allegations of insubordination, discourtesy, and uncooperativeness were not pretext for gender discrimination).  The Tenth Circuit did not address the elements of Ms. Bird's First Amendment retaliation claim at issue in the current Motion

for Summary Judgment or the facts as they relate to those elements. Significantly, in remanding the case to the district court for further proceedings consistent with its opinion, the Tenth Circuit stated:

> The district court, however, did not determine whether Plaintiff raised a genuine issue of material fact that this belief [that Plaintiff leaked information to the press] substantially motivated West Valley City officials' decision to terminate Plaintiff. . . . We also note that the parties have not otherwise briefed the applicability of these remaining elements—in both the district court and on appeal they disputed only whether Plaintiff's denial of speaking defeated her claim.

Bird, 832 F.3d at 1212–13. Consequently, the law-of-the case doctrine does not foreclose the Court's consideration of the West Valley Defendants' Motion. See Dish Network Corp. v. Arrowood Indem. Co., 772 F.3d 856, 864–65 (10th Cir. 2014) (finding in case where a prior appellate decision addressed but did not resolve the insurers' duty-to-defend that "the law-of-the-case doctrine did not prohibit the district court from resolving the duty-to-defend issue on other grounds").

With respect to the substance of the West Valley Defendants' argument, the West Valley Defendants have not shown that any rational jury would conclude they would have terminated Ms. Bird even absent their belief that she spoke to the press. As addressed above, the Animal Shelter terminated Ms. Bird only <u>after</u> the media leaks— and very soon after those leaks. The termination occurred then despite her supervisor and employees complaining about her years prior. Before the leaks, the West Valley Defendants took no action against Ms. Bird. They never formally disciplined or reprimanded Ms. Bird until after the leaks occurred. This history would allow a rational jury to conclude that the West Valley Defendants would have permitted Ms. Bird to continue working as she always had if they did not think she had caused the press

leaks.  See Brammer-Hoelter, 492 F.3d at 1208 (denying summary judgment on fifth element because defendant had not put forth sufficient evidence to prove an alternative reason for the alleged retaliatory action motivated its actions).

Viewing the evidence in the light most favorable to Ms. Bird, the Court cannot conclude as a matter of law that any rational jury would find the West Valley Defendants would have terminated Ms. Bird absent their belief that she leaked information to press. Genuine issues of material fact exist regarding the reasons for Ms. Bird's termination and whether the West Valley Defendants would have terminated her had the leaks not occurred.  Therefore, the Court denies summary judgment on this element of the Garcetti/Pickering test.

## II.     Qualified Immunity Does Not Protect Mr. Davis from Trial

Mr. Davis contends qualified immunity shields him from trial because he did not violate Ms. Bird's free speech rights.  (Mot. 9-10, ECF No. 59.)  Alternatively, Mr. Davis claims at the time of his actions courts had not clearly established Ms. Bird's right not to be terminated because of her perceived speech.  (Id. at 10.)  Ms. Bird disagrees, arguing that at the time of her termination the United States Supreme Court and the Tenth Circuit had long established the right of public employees to engage in free speech.  (Opp'n 9–10, ECF No. 62.)

### A.  Modified Qualified Immunity Test

"'Generally, when a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show:  (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct.'"  Bird v. Regents of N.M. State Univ., 619 F.

App'x 733, 743 (10th Cir. 2015) (unpublished) (quoting Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014)).

However, when the violation of the right at issue turns on a subjective element, defendants seeking qualified immunity must meet an initial requirement before the court embarks on the traditional qualified immunity inquiry. See Regents, 619 F. App'x at 744 ("'When the qualified immunity inquiry turns on a subjective element, as it does when examining motive, the qualified immunity analysis is modified slightly.") (quoting McBeth v. Himes, 598 F.3d 708, 724 (10th Cir. 2010)). One such subjective element is motive. Id. "In this context, '[t]he defendant must do more than merely raise the qualified immunity defense; he must make a prima facie showing of the objective reasonableness of the challenged conduct.'" Id. "If the defendant carries this burden, 'the plaintiff must then produce specific evidence of the defendant's culpable state of mind to survive summary judgment." Id. (quoting McBeth, 598 F.3d at 724–25).

The modified test applies to qualified immunity claims asserted in defense to employment retaliation cases based on free speech. Regents, 619 F. App'x at 743. The modified test applies because motive, i.e., whether Mr. Davis's belief that Ms. Bird spoke to the press constitutes a substantial or motivating factor in her termination, reflects an essential element of Ms. Bird's First Amendment retaliation claim. See Regents, 619 F. App'x at 744, 757 (applying modified qualified immunity test to First Amendment retaliation claim in employment case on summary judgment); McBeth, 598 F.3d at 724–26 (applying modified qualified immunity test to First Amendment retaliation claim on summary judgment). Therefore, Mr. Davis must first make a prima facie showing of the objective reasonableness of his behavior.

Neither Mr. Davis nor Ms. Bird cited or analyzed the modified test in their briefs. (Mot. 9-10, ECF No. 59.) While the parties' briefs did not address the correct test, the facts bearing on the modified qualified immunity test substantially overlap with the facts pertinent to the Court's analysis of the Garcetti/Pickering elements at issue in the West Valley Defendants' Motion. Therefore, the Court has sufficient evidence before it to address whether qualified immunity protects Mr. Davis.

### 1. Objective Reasonableness

First, Mr. Davis presents sufficient evidence to make a prima facie showing of the "objective reasonableness" of Ms. Bird's termination. As addressed above, evidence exists demonstrating Ms. Bird's insubordinate, discourteous, and/or uncooperative behavior, supplying legitimate reasons for her termination. Mr. Davis identified and reported areas where Ms. Bird fell short in her performance and interactions with him, and other employees complained about her as well. Moreover, Mr. Davis's supervisor, Mr. Morris, testified he reached the same conclusion—that the City could no longer abide Ms. Bird's interpersonal failings. Mr. Davis met his burden to present his prima facie evidence.

### 2. Culpable State of Mind

Next, Ms. Bird must produce specific evidence of Mr. Davis's "culpable state of mind to survive summary judgment" on qualified immunity. Regents, 619 F. App'x at 744 (quoting McBeth, 598 F.3d at 724–25). As addressed above, despite the issues with Ms. Bird's performance over many years, Animal Services did not terminate, or even discipline or reprimand, her until after the leaks to the press. The timing of the termination suggests a culpable state of mind. Additionally, Mr. Davis admits he "felt

very strongly" Ms. Bird leaked the information, told Mr. Morris as much, and expected Mr. Morris considered their conversations when making his decision to terminate Ms. Bird.  Moreover, Mr. Andus, the Animal Services volunteer coordinator, testified that Mr. Davis told him that Ms. Bird was terminated because Mr. Davis believed she leaked negative information to the press.  Thus, Ms. Bird meets her burden to proceed to the standard qualified immunity analysis regarding Mr. Davis.

### 3. Constitutional Violation

Genuine issues of material fact exist regarding the reasons for Ms. Bird's termination and the motivation behind it.  These factual issues require the resolution of conflicting evidence, precluding summary judgment for Mr. Davis on qualified immunity grounds.  See Eisenhouer, 744 F.3d at 1230 (finding defendants not entitled to summary judgment on qualified immunity grounds in light of conflicting evidence concerning retaliatory motive).  Mr. Davis argues the undisputed facts show he "was not involved in a decision to terminate Plaintiff;" therefore, Ms. Bird has not presented sufficient evidence that he violated her constitutional rights.  (Mot. 9, ECF No. 59.)

Conflicting evidence exists concerning the role Mr. Davis played in Ms. Bird's termination such that a rational jury could conclude Mr. Davis participated decisively in the termination decision.  And, as discussed above, sufficient evidence exits from which a rational jury could conclude Mr. Davis terminated Ms. Bird because he thought she leaked negative information to the press.  Whereas before Mr. Davis had saved Ms. Bird from termination, after the leaks he ensured her termination.  Such a termination would violate Ms. Bird's right to be free from retaliation for her real or perceived first amendment activities.  Therefore, before the Court can determine whether Mr. Davis

has qualified immunity, a jury must weigh the conflicting evidence and determine the extent of his involvement in the decision to terminate Ms. Bird.

4. Clearly Established

Finally, the Court rejects Mr. Davis's argument that the constitutional right Mr. Davis allegedly violated was not clearly established at the time of the alleged violation. Mr. Davis argues the lack of a clearly established constitutional right because the Supreme Court had not decided Heffernan v. City of Paterson, 578 U.S.__, 136 S. Ct. 1412 (2016)—finding a plaintiff could maintain a First Amendment retaliation claim where a defendant mistakenly believed that the plaintiff engaged in a protected activity—at the time of Ms. Bird's termination. The Heffernan decision clarified the circumstances under which a plaintiff can maintain a First Amendment retaliation claim; it did not establish a new constitutional right.

"In assessing whether the right was clearly established, we ask whether the right was sufficiently clear that a reasonable government officer in the defendant's shoes would understand that what he or she did violated that right." Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007). "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 842 (10th Cir. 2005) (quoting Roska v. Peterson, 328 F.3d 1230, 1248 (10th Cir. 2003)).

The constitutional right at issue in this case is a public employee's right not to be fired for her real or perceived exercise of her First Amendment right to free speech, specifically speaking with the press. "It has long been established law in this circuit that

when a public employee speaks as a citizen on matters of public concern to outside entities despite the absence of any job-related reason to do so, the employer may not take retaliatory action." Casey, 473 F.3d at 1333–34. Indeed, the Supreme Court and the Tenth Circuit have found the right of a public employee to speak to a member of the press about her workplace protected by the First Amendment. Mt. Healthy, 429 U.S. at 284; Kent v. Martin, 252 F.3d 1141 (10th Cir. 2001); Barker v. City of Del, 215 F.3d 1134, 1138-1140 (10th Cir. 2000). If Mr. Davis terminated Ms. Bird because he believed she leaked information to the press, he could not have reasonably believed that such an action did not infringe upon Ms. Bird's First Amendment rights.

The portion of the right Mr. Davis claims prevents him from having liability pertains to the accuracy of the employer's belief. The employer's intent does not change even though his belief may be inaccurate. Furthermore, the harm to the employee remains the same even though the defendant's belief was wrong. The liability follows the defendant's intent. See accord Thomas v. City of Blanchard, 548 F.3d 1317, 1328 (10th Cir. 2008) ("For free speech purposes, it does not matter whether an employee is fired for actually reporting alleged wrongdoing to outside authorities or for threatening to do so."). If the defendant believes the employee contacted the press about the workplace, and he intended to fire her for doing so, and he indeed fired her, that is the harm—regardless of whether she actually made the statement.[4] One would not expect qualified immunity to turn on something irrelevant to the underlying harm. Courts had well established the right not to be fired for exercising one's free speech

---

[4] Obviously the plaintiff must prove liability under Garcetti/Pickering. As established above, in this case, disputed material facts remain for the jury to decide regarding whether a violation of the constitutional right occurred.

rights by 1977, over thirty years before the leaks in this case. See Mt. Healthy, 429

U.S. at 284; see also Casey, 473 F.3d at 1333-34 (citing Paradis v. Montrose Mem'l

Hosp., 157 F.3d 815, 818-19 (10th Cir. 1998), which noted the establishment of the law

in this area since the Schalk v. Gallemore, 906 F.2d 491, 495 (10th Cir. 1990),

decision). Therefore, the Court concludes that Ms. Bird's right not to be fired for

exercising her First Amendment rights was clearly established at the time of her firing.

Accordingly, the Court denies Mr. Davis summary judgment on his qualified

immunity defense.

## CONCLUSION

For the foregoing reasons, the Court DENIES West Valley Defendants' Motion

for Summary Judgment.

DATED this 28th day of September 2017.

BY THE COURT:

EVELYN J. FORSE
United States Magistrate Judge